PEOPLE v. SHIRK.

OPINION OF THE COURT.

1. HOMICIDE—SUFFICIENCY OF EVIDENCE.

Testimony given at murder trial that defendant together with deceased and another person had robbed a credit union, that thereafter defendant and a witness had discussed the deceased's being wanted by the police and defendant had said the best thing to do was to "plant" deceased someplace, that defendant had asked the witness if he would help defendant dispose of the body, that defendant admitted at trial he left town with deceased shortly before his death, and that defendant had admitted to a witness that he was involved in disposing of the body, *held*, adequate to support a finding of guilt beyond reasonable doubt of murder in the first degree (CL 1948, § 750-.316).

2. CRIMINAL LAW—INSTRUCTIONS—ADMISSIONS OF JOINT DEFENDANT.

Instruction to jury must provide sufficient protection to a defendant when the confession of one joint defendant is admitted into evidence so as to keep the jury from considering the confession with respect to the guilt of anyone but the declarant.

3. HOMICIDE—WITNESSES—JOINT DEFENDANTS—FEAR—PREJUDICE.

Refusal of a former joint defendant, called as a rebuttal witness, to testify further "because I am afraid of" the defendant, after defendant who was charged with murder had testified denying

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 26 Am Jur, Homicide § 455 *et seq.*
  Attempt to conceal or dispose of body as evidence connecting accused with homicide.  2 ALR 1227.
[2] 26 Am Jur, Homicide §§ 381, 523.
  Propriety of specific jury instructions as to credibility of accomplices.  4 ALR3d 351.
[3, 4] 16 Am Jur 2d, Constitutional Law § 574;  21 Am Jur 2d, Criminal Law §§ 333–344.
[5] 26 Am Jur, Homicide § 297.
[6, 7] 26 Am Jur, Homicide §§ 488, 587.

all knowledge of the killing and after the former defendant's confession implicating defendant was admitted into evidence, *held,* not so prejudicial as to require a new trial (CL 1948, § 750.316).

4. SAME—CONFRONTATION OF WITNESSES—JOINT DEFENDANT—RE-BUTTAL.

Defendant's argument that he was denied his constitutional right of confrontation of a witness, where, after defendant charged with murder had testified denying all knowledge of the killing, former joint defendant whose confession, implicating defendant, had previously been admitted into evidence, was called as a rebuttal witness by the prosecution and refused to testify further "because I am afraid of" the defendant, *held,* not persuasive, since the prosecutor turned the rebuttal witness over to the defense for cross-examination (CL 1948, § 750.316).

DISSENTING OPINION.

T. G. KAVANAGH, P. J.

5. CRIMINAL LAW—FAIR TRIAL.

*American system of administering justice is based on the concept that no man is guilty until his guilt has been established in a fair trial.*

6. SAME—CODEFENDANTS—PREJUDICIAL STATEMENTS.

*Refusal of a former joint defendant, called as a rebuttal witness, to testify further because "I am afraid of" defendant, after defendant who was charged with murder had testified denying all knowledge of the killing, and after the former defendant's confession was admitted into evidence implicating defendant, held, so prejudicial as to vitiate the whole trial.*

7. SAME—PREJUDICIAL STATEMENTS—DUTY OF PROSECUTORS.

*Refusal of former joint defendant, called as a rebuttal witness by prosecution on charge of murder, to testify further "because I am afraid of" defendant, imposed duty upon prosecutor either to try to correct prejudicial statement by requesting that the court compel answers, or by moving for mistrial (CL 1948, § 750.316)*

Appeal from Oakland; Dondero (Stanton G.), J. Submitted Division 2 December 8, 1966, at Lansing. (Docket No. 33.) Decided March 25, 1968. Leave

to appeal granted April 15, 1968, and case remanded to Court of Appeals July 24, 1968. See 381 Mich 764.

Richard Harvey Shirk was convicted of murder in the first degree. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *S. Jerome Bronson,* Prosecuting Attorney, and *Raymond J. Hand,* Assistant Prosecuting Attorney, for the people.

*Douglas W. Booth,* for defendant on appeal.

J. H. GILLIS, J. Defendant, Richard H. Shirk, and one Gerald McKay were charged with first-degree murder* in the death of Carlo Vitale whose body was found in Oakland county on January 19, 1960. They were tried together before a jury in the Oakland county circuit court, which trial commenced on Tuesday, May 17, 1960. On May 20, 1960, the prosecuting attorney was allowed to file an amendment to the information, thereby adding a second count charging Gerald McKay with murder in the second degree. This was done after police officers testified as to confessions made by McKay which had implicated Richard H. Shirk. Gerald McKay then offered, and the court accepted, a plea of guilty to the second count. The trial proceeded as to defendant Shirk only.

During the course of the trial and prior to McKay's plea, when the confession of McKay was introduced into evidence, defendant Shirk's counsel requested, and the court gave, instructions to the jury that such confession could be considered by the jury only against defendant McKay.

---

* CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).—REPORTER.

After defendant Shirk had testified denying all knowledge of the killing, McKay was called as a rebuttal witness by the prosecution. His testimony was, in part, as follows:

"*Q*. Do you know the respondent Richard McKay or—Richard Shirk, rather?

"*A*. Yes.

"*Q*. Are you acquainted with the facts surrounding the shooting of Carlo Vitale?

"*A*. I am not going to answer.

"*Q*. Were you present when Carlo Vitale was killed?

"*A*. I am not going to answer any questions, Mr. Barry.

"*Q*. You are here under subpoena of this court?

"*A*. Yes.

"*Q*. Would you tell this court and the jury why you refuse to answer questions concerning this matter?

"*A*. Because I am afraid of Dick, that is why.

"*Q*. Of Dick Shirk?

"*A*. Yes.

"*Q*. In what way?

"*A*. Just afraid of him, that's all. I don't want to be wrong about anything. I am not going to answer any questions.

"*Mr. Barry:* Your witness."

Then on cross-examination he testified:

"*Q*. Were you told to say that now, sir?

"*A*. Was I told to say that? No. What I was told—I was—that is what I told I was going to say.

"*Q*. You told the police that Carlo Vitale was killed on November 28th.

"*A*. I am not going to answer any questions.

"*Q*. Was Carlo Vitale killed on November 28th?

"*A*. I am not answering any questions, Mr. Bedrosian."

The jury returned a verdict of guilty of first-degree murder against defendant Shirk.

This appeal asserts two errors:

(1) The accused was denied his right to be confronted by the witnesses against him guaranteed by the Michigan Constitution of 1908, art 2, § 19, and the United States Constitution, Am 6.

(2) The evidence (properly admitted) against defendant Shirk was insufficient to support a finding of guilt beyond a reasonable doubt.

With regard to the second assertion of error we find little merit. One witness, David Henry Crow, testified that he, together with Shirk and Vitale (the deceased), held up the Designing Engineers Credit Union. Thereafter the witness and Shirk discussed the fact that Vitale was "hot"—wanted by the police—and Shirk said that the best thing to do would be to "plant" him someplace. Crow also testified that Shirk asked if Crow would help him dispose of the body, saying that he (Shirk) would "send him (Vitale) on his way."

This testimony was corroborated in part by Jo Ann Huldquist.

Shirk admitted he left town with Vitale and McKay shortly prior to Vitale's death.

One witness (Detective Schlacter) testified that Shirk admitted he was involved in disposing of the body. In our view this testimony, if believed, was adequate to support a finding of guilt beyond a reasonable doubt.

In analyzing the first assertion of error, however, we are confronted with a more difficult task. It is clear that when a confession of one joint defendant is admitted under circumstances such as in the instant case, the instruction the court is required to give to the jury must provide sufficient protection to the defendant. See *Paoli* v. *United States* (1957), 352 US 232 (77 S Ct 294, 1 L Ed 2d 278). The

question of the sufficiency of the jury instructions is whether or not the limiting instructions "kept the jury from considering the contents [of the statements] with respect to the guilt of anyone but the declarant." See *Wong Sun* v. *United States* (1963), 371 US 471, 490 (83 S Ct 407, 419, 9 L Ed 2d 441, 457). The instructions given by the trial court were accurate and clear.

A reading of the testimony of the rebuttal witness leads us to a different conclusion from that reached in the dissenting opinion. The prosecutor may have been forewarned that McKay was going to take the stand and decline to testify. We do not know whether the prosecutor hoped that once McKay was sworn in as a witness he would change his mind and testify, or whether the prosecutor put him on the stand for the purpose of eliciting the testimony that he was afraid of Shirk. Any comments on this point are but speculative. While we agree that it would have been better if the witness had not testified that he was afraid of Shirk, the statement as made was not so prejudicial as to require a new trial. Defendant's argument that he was denied his constitutional right of confrontation of the witness is not persuasive. The prosecutor turned the rebuttal witness over to the defense for cross-examination and the fact that the defense was dissatisfied with the cross-examination is not grounds for reversal.

Affirmed.


McGREGOR, J., concurred with J. H. GILLIS, J.


T. G. KAVANAGH, P. J. (*dissenting*). If we could adopt the theory that the end justifies the means, we could affirm the defendant's conviction without compunction.

Richard Shirk and Gerald McKay killed Carlo Vitale. Gerald McKay confessed the murder to the police investigating it. Richard Shirk, in an unusual effort to obtain a new trial after he had been convicted and sentenced to life in prison, admitted it in a letter to the trial judge.

While his admission was in direct contradiction to his sworn testimony at trial, a fact which the trial judge used as the basis for denying the request, a reading of the testimony of the witnesses touching upon the interstate flight of the defendants and the deceased, leads to the inescapable conclusion that at long last, Richard Shirk told the truth when he admitted the murder.

So we have a confessed killer jailed for murder. Justice has been served—if the end justifies the means.

But our whole system of administering justice is based on the concept that no man is guilty until his guilt has been established in a fair trial. In our tradition even Richard Shirk should not be imprisoned without a fair trial.

Among myriad instances of prejudicial conduct which the record of this trial discloses, one is so blatant that my vote for reversal is based squarely upon it.

After the defendant McKay was permitted to plead guilty to second-degree murder, following the admission of his confession which implicated Shirk, he was called as a rebuttal witness after Shirk had testified that he had not committed the killing. The excerpt from the transcript quoted in the majority opinion discloses how he persisted in his refusal to testify and explained his refusal by his fear of Shirk.

My brothers maintain that to conclude the prosecutor knew, before McKay took the stand, what he would say from his statement:

"Was I told to say that? No. What I was told —I was—that is what I told I was going to say",

is to speculate on the prosecutor's forewarning. While such indulgence may appear as a more charitable view towards the prosecutor's position, we cannot practice charity towards the prosecutor if it requires injustice to the defendant.

The prosecutor either knew what McKay would say or he didn't. If he knew, he should be censured for calling him. If he didn't know, when McKay's testimony presented such a surprising affront, since the prosecutor had made it possible by calling McKay, he had a duty to try and correct it, either by requesting that the court compel answers or moving for a mistrial. The fact that he merely said, "Your witness", persuades me that he was neither surprised nor disappointed.

In my view the necessary effect of this performance was so totally prejudicial to the defendant as to vitiate the whole trial.

I would set aside the conviction and remand for proper prosecution.